Eugene DUNPHY, Naomi Dunphy, Mary Stoner, Willis Stoner, T. M. Thompson, Wesley W. Fisher, Maxine Recknor, Earl Recknor, Joseph Hanrahan, Mary K. Fisher, Margaret Hanrahan and Larry E. Crosser, Appellants,

v.

CITY COUNCIL OF the CITY OF CRESTON, Iowa, Appellees.

No. 58986.

Supreme Court of Iowa.

July 29, 1977.

Mullin, Mullin, McLaughlin & Harvey, Creston, for appellants.

Paul J. Boysen, Jr., Creston, for appellees.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND and UHLENHOPP, JJ.

MASON, Justice.

Plaintiffs, residents, property owners, taxpayers and electors of the city of Creston, filed a petition for writ of certiorari in the Union District Court seeking review of the actions of the Creston City Council in approving and authorizing a municipal improvement project. This project involved remodeling and restoration of the Burlington Railroad Depot Building for use as a new City Hall complex. Said writ was issued but, following hearing, was quashed and defendant's actions were sustained. Plaintiffs appeal from the district court's order quashing the writ and dismissing their claim for relief.

On April 5, 1973, Burlington Northern, Inc., conveyed to the city of Creston "for exclusively public purposes" a parcel of real estate located within the city's central business district. Upon said realty is an abandoned railroad depot which is the center of this controversy.

In June of 1973 a resolution was passed by the then sitting city council authorizing the demolition of the depot. However, that resolution precipitated court battles, injunctions and, ultimately, a change in council membership.

March 5, 1974, the new council, defendant herein, voted to conduct a special election June 4 to determine whether the citizens of Creston favored the issuance of general obligation bonds in the amount of $491,000 with a total authorized indebtedness of $525,000 for the purpose of converting the depot into a city hall complex. That election resulted in approval of the bond issue with 1,828 "yes" votes and 590 "no" votes cast.

The first set of bids on the depot project was opened at a public hearing and council meeting May 8, 1975, but all exceeded the funds authorized by the special election. The plans were subsequently revised and a second set of bids was opened July 15. At that hearing, written and oral objections to the plans and specifications were asserted by various members of the citizenry and overruled by defendant council. A resolution was passed approving the project and a low bid of $496,000 was accepted. However, defendant, on advice of bond counsel, subsequently voided its actions at the July 15 hearing and meeting recognizing the validity of the objections raised therein based upon defendant's failure to file the plans and specifications with the city clerk.

A third set of bids was opened at a September 30 public hearing and council meeting. Again, objections to the plans, specifications and form of contract were voiced and overruled by defendant. A resolution approving all aspects of the project carried and bids were opened. A low bid of $502,933, submitted by A. V. Boyd & Sons of Creston, was accepted.

Plaintiffs filed their previously mentioned petition for writ of certiorari October 7, 1975, alleging defendant's motion overruling the objections to the project exceeded defendant's proper jurisdiction and constituted an illegal act within the meaning of rule 306, Rules of Civil Procedure. The district court ordered the issuance of the writ and sua sponte stayed all proceedings pertaining to the project.

On October 13 defendant filed a motion requesting the court to order plaintiffs to post a bond. Said motion was based upon the fact the stay order prevented defendant from proceeding with the depot project and would cause the loss of the low bid since said bid would expire if not contracted for by October 20. An application for an immediate hearing on defendant's request was filed the same day.

On October 15, the hearing on defendant's bond request was continued until November 7 and the parties entered into the following stipulation:

" * * * that so much of the order of 7 October 1975 as stays proceedings of the defendants as to the execution of a contract between the city council and one Boyd be expunged and that any legal disability now existing so far as the mayor and city clerk

of Creston as to the execution of that contract be removed. * * *."

Plaintiffs filed a resistance to defendant's bond request on October 20 arguing that they did not request the stay order and, consequently, should not be required to post bond therefor. However, on November 7 the district court ordered plaintiffs to post bond in the amount of $200,000 within ten days.

Defendant's answer, filed November 19, specifically denied each material allegation set forth in plaintiffs' petition.

At the beginning of the trial on the merits of plaintiffs' claim for relief, defendant filed a motion to dismiss based upon plaintiffs' failure to post bond as required by the court's order of November 7. After some discussion between the court and counsel defendant's motion was taken under advisement.

In the hope that it would be explanatory of matters contained in the return of the writ, the trial court permitted plaintiffs to introduce additional exhibits and testimony. However, the court determined its hope was not justified and found that defendant had not exceeded its proper jurisdiction or otherwise acted illegally.

In our opinion the contentions of the parties raise the following issues for review in this court:

1. Did defendant exceed its proper jurisdiction and otherwise act illegally in overruling the objection asserted at the September 30, 1975, public hearing that no form of contract for the project was on file prior to said hearing and in adopting a resolution approving the form of contract?

2. Did defendant exceed its proper jurisdiction and otherwise act illegally in exceeding the authorized indebtedness for the depot project?

3. Did defendant exceed its proper jurisdiction and otherwise act illegally in failing to make findings of fact and conclusions of law with reference to the two sets of written objections to the depot project asserted at the September 30, 1975, public hearing?

4. Did the trial court err in sustaining defendant's motion requesting plaintiffs be required to post bond and in not complying with rule 118, R.C.P., in ruling on said motion?

5. Did defendant act illegally in overruling objections to the depot project which pointed out specific violations of chapter 384, The Code, 1975?

6. Did defendant exceed its proper jurisdiction and otherwise act illegally in overruling objections to the depot project based upon the fact that the site had already been set aside for public parking and that the realty was mortgaged and was subject to defects in title?

7. Did defendant exceed its proper jurisdiction and otherwise act illegally in overruling objections to the project by motion rather than by resolution?

8. Did the trial court err in (1) failing to make any "meaningful" findings of fact and conclusions of law, (2) going outside of the record for the basis of a statement contained in its ruling, and (3) failing to rule separately on the issues presented by the written objections made at the September 30, 1975, public hearing which were incorporated into plaintiffs' petition?

9. In overruling the objections to the depot project, was defendant exercising a judicial function within the meaning of rule 306, R.C.P.?

I. Pertinent to a determination of the appropriate scope of review herein is the following language from *Smith v. Iowa Liquor Control Commission,* 169 N.W.2d 803, 810 (Iowa 1969):

"The action of certiorari is by ordinary proceedings. Rule 317 Rules of Civil Procedure; *Staads v. Board of Trustees of F. R. P. Fund,* Iowa, 159 N.W.2d 485, 489. Appeal to us from the trial court's judgment is governed by the rules applicable to appeals in ordinary actions. R.C.P. 318. See also Rule 344(f), par. 1. * * *."

One of the many well-established principles applicable to appeals in ordinary actions was set forth as follows in *City of Spencer v. Hawkeye Security Insurance Co.,* 216 N.W.2d 406, 408 (Iowa 1974):

"Where the facts are not in material dispute, interpretation placed thereon by trial court becomes a question of law which is not conclusive on appeal. * * * [citing authority]."

■ The facts herein are not in dispute and no conflicting inferences may be drawn therefrom. Consequently, this court must independently determine the questions of law presented herein.

II. It would appear to be advantageous to first confront the last issue enumerated above. If defendant was not exercising a "judicial function" within the meaning of rule 306, R.C.P., plaintiffs' claim for relief would be without foundation. Therefore, that preliminary issue will be dealt with in this division.

Under different circumstances the identical issue was raised in *Buechele v. Ray*, 219 N.W.2d 679, 681 (Iowa 1974), wherein this court analyzed the problem as follows:

"The term 'judicial functions' is not here construed in a strict or technical sense. In other words, certiorari will lie if the act in question is quasi-judicial in nature. * * [citing authorities].

"In the same vein, it is the nature of an act, not identity of the board or tribunal charged with its performance, which determines whether or not a function is judicial or quasi-judicial. * * * [citing authorities].

"It is at best difficult to determine whether acts are judicial or quasi-judicial. * * * [citing authority]. The focal point of the solution may lie in use of the term 'quasi.' That word ordinarily means superficially resembling but intrinsically different. Therefore, when an activity appears to be judicial in nature, but in reality is not, it is termed quasi-judicial. * * * [citing authority].

"In keeping therewith it has been authoritatively held, an inferior tribunal which is not a court exercises a judicial function when (1) the questioned act involves a proceeding in which notice and opportunity to be heard are required; or (2) a determination of rights of parties is made which

requires the exercise of discretion in finding facts and applying the law thereto. * * [citing authorities].

"Although we long ago indicated our view is not so restricted, it still remains the foregoing judicial attributes are worthy of some weight in resolving the question at hand.

"At the same time, consideration is accorded another test voiced with approval in *Massey*, supra, [239 Iowa 527, 31 N.W.2d 875] i. e., whether or not the challenged act goes to the determination of some right the protection of which is the peculiar office of the courts. * * * [citing authority].

"On the other hand, it must be understood the mere exercise of judgment or discretion is not alone sufficient to characterize an act as quasi-judicial. * * * [citing authorities]."

In *Porter v. Iowa State Board Public Instn.*, 259 Iowa 571, 144 N.W.2d 920, resident-taxpayers of the Northwest Webster School District brought a certiorari action challenging the order of defendant board approving an agreement entered into by said school district for the leasing of temporary classrooms. In answering the contention the function performed therein by defendant board was not judicial in nature, this court said:

"In *Hohl v. Board of Education*, 250 Iowa 502, 505, 94 N.W.2d 787, 789, we say: 'Acts of approving plans, establishing boundaries, etc. by boards of education are of a quasi-judicial character and, as such, may be the subject of certiorari review in the courts. *Anderson v. Hadley*, 245 Iowa 550, 63 N.W.2d 234, and many citations.'

" * * *

"Here the state board did not restrict its ruling to a review of administrative matters. It passed on the legality of the lease between the school district and Raymur. We hold certiorari lies to review its action." 259 Iowa at 576, 144 N.W.2d at 923.

In *Massey v. City Council*, 239 Iowa 527, 530–532, 31 N.W.2d 875, 877–879, an excellent analysis of the "judicial function" limi-

tation for certiorari review is set forth. Particularly pertinent hereto is the following portion thereof:

"In *Bremer County v. Walstead,* 130 Iowa 164, 169, 106 N.W. 352, 354, we hold certiorari will lie to review the rescission by a board of supervisors of its prior action in appropriating funds for the erection of a bridge. The opinion states:

" 'Certiorari has several offices, among which is that of supplying defects of justice in cases obviously entitled to redress, and yet unprovided for by the ordinary forms of proceedings. * * * [citing authority]. It is especially applicable in cases where inferior boards, officers, or tribunals exceed their authority and no method of appeal has been provided by statute.'

"*Jewett v. Ayres, Judge,* 167 Iowa 431, 435, 149 N.W. 529, 531 states:

" ' * * * it must be accepted as the settled doctrine that, when there is no remedy by appeal, and there has been by the inferior tribunal such act as to constitute error affecting substantial rights, or an abuse of power in the exercise of its jurisdiction, the aggrieved party may avail himself of this remedy.' "

The court in *Massey* pointed out a number of instances where certiorari was held to be an appropriate remedy. Among those were (1) a city council's action in vacating or extending streets and alleys, (2) a city council's action in passing upon a petition for reduction of taxes, (3) action of the state highway commission in instituting condemnation proceedings, and (4) a city council's action in adopting a resolution revoking a building permit.

■ In our opinion the acts of the Creston City Council in approving and authorizing the remodeling and restoration of the Burlington Railroad Depot Building for use as a new City Hall complex involved a proceeding in which notice and opportunity to be heard are required by the provisions of section 384.102, The Code, which will be set out in the next division.

Whether the council's acts in the foregoing respects constituted the exercise of a judicial or quasi-judicial function in this case need not be resolved. In either event such acts went to a determination of the certification of taxes to be levied on all taxable property within the city limits of Creston for the purpose of creating a fund for payment of the general obligation bonds contemplated. When the exercise of this right to levy taxes is not in conformity with the requirements of the statute, protection is afforded the taxpayers in the courts. There is no statutory provision for appeal procedures pertaining to plaintiffs' situation.

In light of this record and the authorities cited in this division it is our view plaintiffs' petition for writ of certiorari was appropriate and their appeal from the district court's order annulling said writ will be considered on the merits.

III. Plaintiffs maintain defendant exceeded its proper jurisdiction and otherwise acted illegally in overruling the objections asserted at the September 30 public hearing based upon defendant's failure to file a copy of the construction contract or form thereof with the city clerk prior to said hearing. In addition, plaintiffs contend the subsequent adoption of a resolution approving said contract was likewise outside defendant's jurisdiction and otherwise illegal. Plaintiffs' assertion defendant was obligated to file said document is based upon section 384.102, The Code, 1975, which provides as follows:

"When the estimated total cost of a public improvement exceeds the sum of ten thousand dollars, the governing body shall not enter into a contract for the improvement until it has held a public hearing on the proposed plans, specifications, and form of contract, and estimated cost for the improvement. Notice of the hearing must be published as provided in section 362.3. At the hearing any interested person may appear and file objections to the proposed plans, specifications, contract, or estimated cost of the improvement. After hearing objections, the governing body shall by resolution enter its decision on the plans, specifications, contract, and estimated cost."

In response to plaintiffs' contention there was a duty to file the construction contract under the provisions of the foregoing statute defendant maintains there is no requirement in chapter 384, The Code, which imposes a duty to file the entire contract with the plans and specifications; that section 384.102 merely requires the "form of contract" be filed; and this requirement was satisfied.

 It is the court's view the legislative intent in enacting this statute was to insure that taxpayers are afforded the opportunity to effectively question and object to the proposed actions of their elected representatives.

In view of what we find to be the legislative intent we hold the entire contract must be filed along with the plans and specifications in order to conform with the requirements of the statute. Otherwise, the legislative intent in enacting section 384.102 would be thwarted.

Thus, the problem is whether defendant complied with the requirements of section 384.102, The Code.

 Before the September 30 public hearing, no contract or form of contract was on file in the city clerk's office. The only reference to the contract was in the specifications submitted by the project architect and filed September 12. At page "0.6" of the specifications is the following paragraph:

"The 'General Conditions of the Contract for Construction', AIA Document A–201, Twelfth Edition, April 1970, Articles 1 through 14 inclusive, is a part of this contract, and is incorporated herein as fully as if here set forth. A copy of this Document is on file in the office of the Architect and will be exhibited upon request."

The architect's office referred to in the paragraph set out above was located in Des Moines, approximately 70 miles from Creston.

The paragraph of the specification set out above does not satisfy the requirement that the form of contract must be on file to insure public access thereto. One paragraph cannot be deemed to constitute the form of a contract eighteen pages in length, which was the case here. In addition, although not argued by defendant, the fact the "General Conditions" paragraph is followed by three and one-half pages of modifications, deletions and additions does not satisfy the form of contract requirement. Those changes only affect six of the fourteen articles contained in the contract.

The council in approving and authorizing the project herein failed to comply with the requirements of the statute.

In light of the foregoing the trial court erred in not annulling defendant's action approving the construction contract for the depot project. Therefore, the matter must be remanded with directions to the district court to sustain the writ.

IV. Although the determination made in the previous division would appear to dispose of plaintiffs' appeal, the likelihood that additional errors assigned herein might recur makes it expeditious for this court to deal with those contentions at this time.

Plaintiffs maintain defendant exceeded its proper jurisdiction and otherwise acted illegally in exceeding the expenditures and indebtedness authorized by the special election held June 4, 1974, by approximately $50,000. However, plaintiffs' costs computations are based upon such items as "normal architect's fees to complete the project," and consequently, plaintiffs' contention is not supported by the record herein. Suffice it to say that if this project is reinitiated, the governing body of Creston must abide by the provisions of chapter 384, The Code, including section 384.26 which regulates special elections held for the purpose of authorizing the issuance of general obligation bonds.

V. Plaintiffs contend defendant exceeded its proper jurisdiction and otherwise acted illegally by failing to make findings of fact and conclusions of law in overruling the written objections to the depot project. Reliance is placed solely upon this court's decision in *Erb v. Iowa State Board of Public Instruction,* 216 N.W.2d 339 (Iowa 1974).

Plaintiffs' argument stems from the fact defendant dealt with the objections asserted in the following manner, as evidenced by the minutes of the September 30 hearing:

"Fullenkamp moved, seconded by Applegate that the Council override the objections presented on the remodeling of the old railroad depot. All voted aye. Motion carried."

The following language from *Erb*, 216 N.W.2d at 342, is relied upon by plaintiffs in support of their contention defendant is required to make findings of fact:

"Although Iowa does not have an administrative procedure act to guide administrative boards, we have held such boards are required, even without statutory mandate, to make findings of fact on issues presented in any adjudicatory proceeding. Such findings must be sufficiently certain to enable a reviewing court to ascertain with reasonable certainty the factual basis and legal principle upon which the administrative body acted. * * * [citing authorities].

"The board violated this precept in the present case. No findings were made. This would be sufficient basis to hold trial court should have sustained the writ of certiorari."

Since the *Erb* decision was filed, chapter 17A, The Code, the Iowa Administrative Procedure Act has been enacted. The regulatory provisions therein are inapplicable to defendant in light of section 17A.2(1), which provides in part as follows:

"'Agency' means each board, commission, department, officer or other administrative office or unit of the state. 'Agency' does not mean the general assembly, the courts, the governor or *a political subdivision of the state or its offices and units.* * * *." (Latter emphasis supplied).

■ The principles enunciated in *Erb* have been superseded by chapter 17A and, as has been demonstrated, the latter does not substantiate plaintiffs' position. No other authority is cited in support of their argument. Plaintiffs have not established as a matter of law defendant was required to make findings of fact in conjunction with its overruling of the objections asserted at the public hearing.

The conclusion defendant was not required to make findings of fact does not hamper this court's review of errors assigned or the trial court's certiorari review, since, as previously noted, only questions of law are involved herein.

■ VI. Plaintiffs' contentions concerning defendant's motion requesting plaintiffs be ordered to post bond and trial court's subsequent order to that effect need not be resolved. Plaintiffs never complied with that order and defendant's motion to dismiss based upon said noncompliance was overruled. Plaintiffs were not harmed by the bond order and cannot be heard to complain. See *Shane v. Russell*, 250 Iowa 44, 46, 92 N.W.2d 567, 568 and *Baysinger v. Haney*, 261 Iowa 577, 583, 155 N.W.2d 496, 499.

Their protestations to the effect the trial court's decision herein may have been the product of prejudice produced by plaintiffs' defiant conduct are not substantiated by a reading of the trial court's ruling and order.

VII. Plaintiffs maintain defendant exceeded its proper jurisdiction and otherwise acted illegally in overruling objections which pointed out specific violations of various sections of chapter 384 in the contract letting procedure utilized herein.

Section 384.97 sets out the requirements for the notice to bidders and provides in part as follows:

"The notice to bidders must state the following items:

" * * *

"4. In general terms when the work must be commenced and when it must be completed.

" * * *."

Plaintiffs argue the notice published by defendant was insufficient in that it stated the construction "shall be commenced within 365 days after the contract is awarded and shall be completed on or before September 15, 1976, subject to any extension of time which may be granted by" defendant.

Plaintiffs point out the provisions of said notice allow construction to be commenced as late as September 30, 1976, even though the tentative completion date is September 15, 1976.

Defendant's brief ignores this issue and thus offers no justification for the very general terms pertaining to commencement and completion dates. It is not necessary to resolve this issue. If this project is commenced anew, suffice it to say the provisions of section 384.97 must be complied with by the governing body of Creston in all respects.

Plaintiffs next argue the notice published by defendant violated section 384.98 which mandates security for the bids tendered. However, the notice clearly satisfied the provisions of section 384.98, and consequently, plaintiffs' contention can be summarily rejected.

Finally, plaintiffs direct this court's attention to section 384.99 and assert defendant's notice clearly violated the express provisions thereof. The notice herein contained the following paragraph:

"The City Council reserves the right to reject any or all bids, to waive formalities, and to enter into such contract or contracts as it shall deem to be for the best interest of the City of Creston, Iowa."

■ In light of the fact the project of concern herein did not involve a public utility, defendant's notice clearly contravened section 384.99, which provides:

"The contract for the public improvement must be awarded to the lowest responsible bidder, provided, however, that contracts relating to public utilities or extensions or improvements thereof, as described in division V of this chapter, may be awarded by the governing body as it deems to be in the best interests of the city."

Once again, if in fact the depot project is begun anew, the Creston City Council is directed to comply with the provisions of chapter 384, The Code, including section 384.99.

VIII. Plaintiffs argue defendant exceeded its proper jurisdiction and otherwise acted illegally in overruling objections to the project based upon the fact that the project site had already been established as the site for a public parking lot.

Apparently, plaintiffs' position is that since the project site was already destined to become a public parking lot, defendant could not reverse that decision. However, the only authority cited by plaintiffs is section 362.7, which merely provides that a measure passed prior to the effective date of the Home Rule Act, Second Session of the Sixty-fourth General Assembly, chapter 1088, which is valid under the applicable statutes at the time of passage, remains valid unless irreconcilable with the provisions of chapters 362, 364, 368, 372, 376, 380, 388 or 392. Clearly, section 362.7 has no bearing on the argument asserted by plaintiffs.

Pertinent hereto is the following language from *Edwards Realty & Finance Co. v. City of Superior,* 250 Wis. 472, 27 N.W.2d 370, 372–373:

" * * * A municipal corporation, like other legislative bodies, has a right to reconsider under parliamentary law its vote and action upon questions properly pending before it, and rescind its previous action provided vested rights are not violated and such rescission is in conformity with the law applicable to the government of the body. * * * [citing authority]." See also *Anderson v. Judd,* 158 Colo. 46, 404 P.2d 553, 557; *Dal Maso v. Board of County Commissioners, etc.,* 182 Md. 200, 34 A.2d 464, 467; 56 Am.Jur.2d, Municipal Corporations, etc., section 352, page 379.

■ Plaintiffs do not point to any violation of vested rights nor contravention of applicable statutory provisions. The general statement of law enunciated by the above authorities is dispositive of the argument asserted herein and leads to the conclusion plaintiffs' position is without merit.

Plaintiffs cite no authority in support of their objections based upon alleged defects in the title to the realty involved. Hence, their contentions in this respect present nothing for review.

IX. The objections asserted at the public hearing were overruled by council motion prior to the adoption of a resolution approving the plans, specifications and form of contract for the depot project. Plaintiffs contend the trial court erred as a matter of law in holding defendant was not required by section 384.102 to rule upon the objections by resolution rather than motion.

Plaintiffs' position is without merit. Section 384.102 only requires that after hearing objections "the governing body shall by resolution enter its decision" on the various aspects of the proposed project. A requirement the objections be overruled by a resolution cannot be gleaned from the language of section 384.102 and plaintiffs' argument to the contrary cannot be sustained.

X. Upon remand, the issues discussed previously herein are reasonably likely to recur in that they concern actions taken by defendant as a prerequisite to the finalization of the depot project. However, the principles of expediency and judicial efficiency which dictated the resolution of those issues do not produce the same result with respect to plaintiffs' contention the trial court's order and judgment herein was deficient in various respects.

Any errors therein are much less likely to recur in that any district court action is one step further removed from the commencement of the depot project, the ultimate issue herein. It would thus be premature to deal with alleged errors in the trial court which would only arise again if a number of contingencies in fact came about.

In *Farmers Insurance Group v. Merryweather*, 214 N.W.2d 184, 190 (Iowa 1974), this court held that one dissatisfied with the trial court's findings should ask that they be amended or enlarged. See rule 179(b), R.C.P.

For the reasons indicated we decline to reach the question presented by plaintiffs' contentions.

With directions to the trial court to enter an order sustaining the writ issued herein and annulling defendant's actions with respect to the depot project, the case is—Reversed and remanded.